UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CHRIS A. BLEVINS | ) |
| | ) |
| Plaintiff, | ) |
| | ) CAUSE NO. 3:11-CV-00120-CAN |
| V. | ) |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | |

**OPINION AND ORDER**

On September 9, 2011, Plaintiff, Chris Ann Blevins ("Blevins"), filed her complaint seeking review of the final decision of Defendant, Commissioner of Social Security ("Commissioner"). The Commissioner filed his response on December 16, 2011. Blevins filed her reply brief on December 30, 2011. This Court now enters its ruling based on the consent of the parties and 28 U.S.C. § 636(c).

**I.   PROCEDURE**

On December 18, 2006, Blevins filed her application for disability insurance benefits alleging a disability beginning on December 1, 2005. (Tr. 26). Her application was initially denied on May 23, 2007, and upon reconsideration on July 13, 2007. *Id*. Blevins timely filed a Request for Hearing on August 3, 2007. *Id*. She appeared *pro se* and testified before an Administrative Law Judge ("ALJ") on February 19, 2009, in South Bend, Indiana.(Tr. 26). On March 12, 2009, the ALJ denied Blevins's application for disability benefits, and the Appeals Council denied her Request for Review on October 28, 2010, thus rendering a final decision of

1

the Commissioner. (Tr. 5). After an extension was granted by the Appeals Council, Blevins timely filed her civil action on March 21, 2011 pursuant to 42 U.S.C. § 405(g). (Tr. 1).

## II. RELEVANT BACKGROUND

Blevins was born on August 2, 1979, and is currently 32 years old. (Tr. 14). She stands 5'1," and weighed 174 pounds at the time of the ALJ hearing, and completed high school. (Tr. 35-36, 57, 130). She had past relevant work experience as a bagger, a cook, inventory control, machine operator, parts sorter, and stocker. (Tr. 132).

For purposes of eligibility for Social Security disability insurance benefits, Blevins's insured status expired on December 31, 2005 (Tr. 28, 112). In order to establish entitlement to disability insurance benefits, she has to demonstrate that she was disabled on or before December 31, 2005. *See* 42 U.S.C. §§ 416(i)(3) and 423(a)(1); *Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997).

### A. Medical Evidence

On April 13, 2004, Dr. Harley W. Yoder, a treating physician, found Blevins to have acute sinusitis and hypothyroidism. (Tr. 218, 224). On April 23, 2004, an examination conducted by another doctor found Blevins to have diarrhea with gastroenteritis type symptoms and vaginitis. (Tr. 218).

In June 2004, Blevins went to Dr. Harley W. Yoder, with complaints of abdominal discomfort and mood swings (Tr. 217). Blevins reported that she had been through multiple treatments for endometriosis and that she recently had a tumor removed from her ovary. *Id.*[1] Blevins reported taking pain medication but it failed to help with her pain. Additionally, she

---

[1] Endometriosis is inflamation of the endometrium, a tissue of the uterine wall. Dorland's Medical Dictionary, 441 (26th ed. 1985)

2

stated that she experienced symptoms of a urinary tract infection over the past week. Because of her pain symptoms, she quit working. *Id*.

Dr. Yoder's physical examination revealed that Blevins experienced abdominal discomfort. *Id*. In addition, Dr. Yoder noted that Blevins's diagnoses included endometriosis, a urinary tract infection, hypothyroidism, and hypertension. *Id*. Dr. Yoder prescribed medication for both hypertension, urinary tract infection, and Motrin 800 for abdominal pain. *Id*. Furthermore, Dr. Yoder recommended that Blevins see a gynecologist for a second opinion as to whether she may need a hysterectomy for her chronic abdominal pain symptoms. *Id*.

In July 2004, Blevins visited a gynecologist with complaints of moderately progressive abdominal pain over the past couple years. (Tr. 248). Blevins reported that she had previously been diagnosed with endometriosis. *Id*. She also reported that she experienced pain approximately three out of four weeks of the month and occasionally missed work because of pain around her menstrual cycles. *Id*. The gynecologist's examination of Blevins's pelvic region revealed moderately severe pain over her cervix and uterosacral ligaments. *Id*. The gynecologist recommended that Blevins undergo a vaginal hysterectomy in order to help treat her chronic pelvic pain. *Id*.

In August 2004, the gynecologist performed a vaginal hysterectomy on Blevins. (Tr. 205-206). The gynecologist noted that Blevins tolerated the procedure quite well and that she did well following surgery. (Tr. 205).

In September 2004, the gynecologist examined Blevins for a follow-up visit. Blevins reported that, other than the typical fatigue and occasional twinges of discomfort, she was feeling wonderful. (Tr. 246). The gynecologist stated that the hysterectomy definitely resolved Blevins's

pain and discomfort and discovered no problems during the physical examination. *Id*.

In October 2004, Blevins came to Dr. Yoder wanting to change her medications. She reported that her blood pressure had been creeping up and she had swelling in the legs. (Tr. 217). Additionally, Blevins claimed to be having difficulties emotionally with mood swings since her hysterectomy. *Id*. Dr. Yoder ordered Blevins to undergo thyroid function testing, which indicated that Blevins's thyroid stimulating hormone levels were within the upper levels of the normal range. (Tr. 220). Dr. Yoder diagnosed Blevins with hypertension, hypothyroidism, and depression. (Tr. 217). Dr. Yoder ordered Blevins to take antidepressants, switch her hypertension medication, and continue to take her medication for her hypothyroidism.

In May 2005, Blevins presented to the gynecologist with complaints of vaginal discharge, itching, and painful urination.(Tr. 245). Blevins reported that she had been getting sores intermittently in her pubic area. *Id*. The gynecologist diagnosed Blevins with mild bacterial vaginosis and a mild yeast infection for which she prescribed medication. *Id*.

In March 2006, Blevins visited another gynecologist with complaints that she felt extremely moody. (Tr. 268-269). She claimed she cried one moment and then felt angry the next moment which, according to her, had been happening the past three to four years. (Tr. 268). She told the gynecologist she was able to cope day to day. *Id*. In addition, she reported taking antidepressants in the past, but claimed that she did not like any of those medications. The only medication she reported taking was for her hypertension. *Id.* The record does not indicate whether she was suffering from any pain or physical ailments at that time. *Id*.

The gynecologist's physical examination of Blevins was normal. *Id*. Blevins reported she frequently walked for exercise and went to the library. *Id*. The gynecologist diagnosed her with a

4

history of endometriosis, treated with a hysterectomy, and PMS-like symptoms not treated with antidepressants. *Id*. The gynecologist recommended Blevins take another form antidepressant medication. *Id*.

In May 2006, Blevins returned to the gynecologist for a follow-up examination. (Tr. 266-267). Blevins reported the that new antidepressant medication had eliminated her moodiness. (Tr. 266). In addition, she stated she was able to cope during the day, that she was not crying, and she was able to sleep at night. *Id.* She went on to report that she was performing all her normal activities and did not have any side effects with the antidepressant medication. The gynecologist's physical examination of Blevins was completely normal, except for noting small lumps on Blevins's back. *Id*. Blevins reported that the small lumps had never limited her activity and that she did not require any pain medication for them. *Id*. The gynecologist referred Blevins to another physician in order to evaluate the lumps on her back. *Id*

In May 2006, Blevins presented to another doctor for an evaluation of several spots on her back, which had recently increased in size and had become occasionally painful. (Tr. 265). The doctor's examination of Blevins was normal, except for three lesions on her back that were consistent with sebaceous cysts.[2] *Id*. Blevins subsequently underwent an uncomplicated sebaceous cyst excision performed without difficulty. (Tr. 226-227, 262). The record indicated she did well following the procedure. *Id*. During the follow-up examination, the doctor reported Blevins's wounds had healed and she was doing well. (Tr. 259).

In June 2006, Blevins went to an internal medicine physician with concerns that she may have diabetes due to symptoms of excessive urination and excessive thirst. (Tr. 290). She also

---

[2]Sebum is the secretion of the sebacious glands; a thick, semifluid substance composed of fat and epithelial debris from the cells. Dorland's Medical Dictionary, 1184 (26th ed. 1985)

complained of being tired all the time. The physician's examination revealed nothing other than Blevins being overweight at 157 Pounds. The physician recommended that Blevins undergo some laboratory testing. (Tr. 291). Later that month, the physician reported that Blevins's testing results indicated that she may have some impaired glucose tolerance, as her fasting blood sugar was slightly elevated, although her hemoglobin was normal. (Tr. 289). The physician stated Blevins may be at an increased risk for the development of diabetes. (Tr. 289).

In May 2007, a state agency reviewing physician opined that there was insufficient medical evidence to establish a severe physical impairment prior to Blevins's date last insured. (Tr.229). Blevins claimed that she became disabled on December 1, 2005 (Tr. 26, 104). Her insured status under the Act expired on December 31, 2005 (Tr. 28, 112). Another state agency reviewing physician affirmed the that opinion in July of 2007.

In May 2007, a state agency reviewing psychologist, opined that there was insufficient medical evidence to establish a severe mental impairment prior to Blevins's date last insured. (Tr. 230, 242).

In August 2007, Blevins visited an internal medicine physician with complaints concerning a recent bout of diarrhea. (Tr. 288). She stated that her diarrhea had recently worsened with episodes of urgency and abdominal cramping occurring four to five times per day. *Id*. She stated that her symptoms occurred right after eating and were associated with some nausea. *Id*. The physician reported that the etiology of Blevins's diarrhea was unclear, but stated that she would wait for further laboratory results. *Id*. Later that month, the physician composed a

6

letter stating that Blevins suffered from Celiac disease.[3] (Tr. 255). People who have been diagnosed with Celiac disease cannot tolerate a protein called gluten, which is found in wheat, rye, and barely. (Tr. 275). Symptoms of Celiac disease may include gas, recurring abdominal bloating and pain, chronic diarrhea, constipation, weight loss/weight gain, fatigue, bone or joint pain, osteoporosis, tingling numbness in legs, muscle cramps, seizures, missed menstrual periods, and infertility. (Tr. 278). The recommended treatment for a patient with Celiac disease is to follow a gluten-free diet. (Tr. 278). For most people, following a gluten-free diet will stop their symptoms, heal existing intestinal damage, and prevent further damage. (Tr. 278).

In January 2009, a family practice physician, Dr. Bertoncini, composed a letter stating that Blevins had been unable to work for several years due to Celiac disease. (Tr. 273). Dr. Bertoncini reported that Blevins had been having years of chronic diarrhea with stool urgency and incontinence, as well as associated paresthesias of the extremities, depression, and anthralgias. *Id*.

### B. Blevins's Testimony

At the administrative hearing, Blevins testified that she became unable to work in 2005 due to constant pain and diarrhea. (Tr. 59). She reported that she had constant pain pretty much all over, including her stomach, arms, and joints. *Id*. She testified that she had approximately seven to eight occurrences of diarrhea per day. In addition, she reported she was taking antidepressant and thyroid medication that period of time. (Tr. 61). Blevins claimed her antidepressant medication made her tired and nauseated. *Id*. She further reported she had

---

[3] Celiac Disease- disease in the abdominal organs which causes pain. Dorland's Medical Dictionary 234 (26th ed. 1985)

dyslexia and some difficulty understanding things. (Tr. 66).

Blevins alleged that she had difficulty lifting things due to pain in her stomach and joints in her hands. (Tr. 62). She testified that she was able to walk around a shopping mall or grocery store without difficulties, but that her ability to stand and/or walk was somewhat limited due to pain in the joints of her legs. *Id*. She further testified that she was only able to sit for about ten minutes at a time due to pain in her legs and lower back. (Tr. 63).

Blevins testified that her activities of daily living included caring for personal hygiene, performing housework, preparing meals, reading, driving, going shopping, and going out to eat with friends and family. (Tr. 64-66).

### C. Additional Evidence

In May 2009, Dr. Bertoncini composed another letter stating that Blevins suffered from Celiac disease, which he stated had caused her to be unable to maintain employment. (Tr. 292). He noted that Blevins had reported that her extremely frequent bowel movements had not allowed her to keep her job working as a gas station attendant. (Tr. 292). He also reported that Blevins suffered from associated fatigue and significant arthralgias. *Id*. He stated that based on Blevins's history reports, she had suffered from Celiac disease since at least December 31, 2005, her date last insured. *Id*.

## III. ANALYSIS

### A. Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual finding must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will

reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. See *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ's findings are supported by substantial evidence and under the correct legal standard. *See Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). If an error of law is committed by the Commissioner, then the "court must reverse the decision regardless of the volume of evidence supporting the factual findings." *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

An ALJ must articulate, at a minimum, his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind the decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). The ALJ must build an "accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may assess the validity of

the agency's ultimate findings and afford a claimant meaningful judicial review." *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004)(quoting *Scott*, 297 F.3d at 595).

B.  **Plaintiff's Motion**

To be eligible for disability benefits, a Plaintiff must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C.§§ 423(d)(1)(A), 1382(c)(a)(3)(A). To be found disabled, the Plaintiff's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C.§§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. Sec(s) 404.1520(e)-(f), 416.920(e)-(f).

Social Security regulations provide a five-step inquiry to evaluate whether Blevins is entitled to benefits. 20 CFR §§ 404.1520(a)(4), 416.920(a)(4). The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the impairment meets or equals an impairment listed in the regulations; (4) the claimant's RFC leaves her able to do past relevant work; and (5) the claimant is unable to perform other work that exists in significant numbers in the national economy. 20 C.F.R.§§ 404.1520(a)(4)(I)-(v), 416.920(a)(4)(I)-(v); *See also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

Blevins argues that the ALJ's decision to deny benefits is marred by legal error, meriting

an outright reversal or, in the alterative, a remand. Specifically, she maintains: (1) the ALJ failed to develop the record; (2) the onset date of disability was prior to December 31, 2005; (3) the ALJ's Step Two finding was not supported by substantial evidence; and (4) the Appeals Council committed a mistake of law by finding that new evidence, Dr. Bertoncini's May 15, 2009, letter, was not material to the disability determination. Each of these arguments will be discussed below.

**1. The ALJ adequately considered the record in this *pro se* case**.

Blevins claims that the ALJ failed to adequately develop the record considering Blevins was representing herself. While the ALJ has a heightened duty to make sure the record is developed when a claimant is unrepresented, how much evidence to gather is a subject on which the reviewing court generally respects the Commissioner's reasoned judgment. *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009). Moreover, "a significant omission is usually required before [the Seventh Circuit] will find that the [Commissioner] failed to assist pro se claimants in developing the record fully and fairly." *Id*. In order to demonstrate that the ALJ failed to develop a full and fair record, the claimant must set forth specific, relevant facts that the ALJ did not consider and must show that the ALJ's significant omission was prejudicial. *Id*. Finally, an ALJ is not required to consult a medical expert where the record is adequate to render a decision. *Skarbeck v. Barnhardt*, 390 F.3d 500, 504 (7th Cir. 2004); 20 C.F.R. § 404.1527(f)(2)(iii).

In this case, the ALJ properly reviewed the existing medical evidence before him because there was no significant omission concerning Blevins's medical history in the record. Dr. Bertoncini made a retroactive opinion of Blevins's disease more than three years after she was insured. The ALJ reviewed multiple medical source opinions from both during and after

11

December 31, 2005. No medical source before this date opined that Blevins was suffering from Celiac disease. In fact, one doctor noted in 2006 that Blevins's physical examination was normal and she appeared to be healthy. It was not until August 2007 that Blevins complained of diarrhea, stool urgency, and abdominal cramping. The medical record indicates she claimed these symptoms were recent.

With regard to developing the record, the ALJ relied upon substantial evidence in supporting his finding that Blevins was not effected by Celiac disease prior to December 31, 2005. The ALJ reviewed multiple medical opinions, one of which occurred prior to the date last insured. The medical opinions did not indicate effects of Celiac disease until August 2007. Finally, Dr. Bertoncini opined three years after December 31, 2005 that Blevins was suffering from Celiac disease at or before this date. This was an opinion that was not supported by other medical opinions closer to the relevant date. Therefore, the ALJ did not make any significant omissions when he declined to seek other medical opinions or further expand the record.

### 2. The ALJ made a reasonable finding based upon substantial evidence that Blevins did not have a severe impairment.

Blevins argues the ALJ improperly determined that she did not have a severe impairment when evaluating Step Two of the social security disability process. Specifically, she claims the ALJ erred when he rejected Dr. Bertoncini's retroactive opinion on the basis of omissions in the record. Additionally, Blevins claims the ALJ erred in not accounting for the commonality of symptoms between endometriosis, hypothyroidism, and Celiac disease in masking the onset of Celiac disease prior to the last insured date.

At Step Two of the sequential disability evaluation process, an ALJ determines whether a claimant's impairments, individually or in combination, are "severe." 20 C.F.R. §

404.1520(a)(4)(ii). A severe impairment is an impairment or combination of impairments that "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c); 404.1521. As a general rule, an ALJ "must consider all relevant medical evidence, cannot substitute his expertise for that of a qualified physician, and, absent countervailing clinical evidence or a valid legal basis for doing so, cannot simply disregard the medical conclusions of a qualified physician." *Pancake v. Amax Coal Co.*, 858 F.2d 1250, 1255 (7th Cir. 1988).

The ALJ based his opinion on substantial evidence that Blevins's impairments were not severe. First, this Court has already found that the ALJ reasonably discounted Dr. Bertoncini's 2009 retroactive opinion. The ALJ properly determined that Blevins was not affected by Celiac disease based on medical opinions prior and after December 31, 2005. The ALJ did not base his entire finding on omissions in the record. Rather, the record itself indicated that Blevins appeared to be healthy in 2006, after the date last insured. Furthermore, after reviewing the entire medical record, no complaints relating to Celiac disease were brought forth until 2007.

Second, the ALJ properly considered the commonality of endometriosis, hypothyroidism, and Celiac disease symptoms. The ALJ explicitly noted Blevins experienced chronic pain in 2004, but he properly supported his decision to not attribute this pain to Celiac disease because the record indicated that Blevins experienced a full recovery after her hysterectomy and there was no subsequent medical evidence indicating Celiac disease symptoms before the date last insured. By claiming the ALJ failed to consider the commonality of symptoms, Blevins is essentially asking this Court to find that the ALJ committed error when he failed to diagnose Blevins as having Celiac disease prior to December 31, 2005, something her doctors were unable

13

to do until August 2007. However, as argued by Blevins, an ALJ should not disregard medical evidence based on his own expertise or disregard the medical conclusions of a physcian. *See Id*. The record indicates through medical opinion that Blevins experienced a full recovery after her hysterectomy and, based on the record, the ALJ properly determined to not attribute the commonality of Blevins symptoms to those of Celiac disease.

### 3. The ALJ properly determined Blevins's condition was not severe based on a combination of impairments.

Blevins argues the ALJ made an improper Step Two finding by failing to consider a combination of impairments including her mental impairments, hypothyroidism, obesity, and medication side effects.

As stated before, an ALJ must articulate, at a minimum, his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind the decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). The ALJ must build an "accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004)(quoting *Scott*, 297 F.3d at 595)

First and foremost, the ALJ states he has "considered all symptoms and the extent to which these symptoms can reasonably be consistent with the objective medical evidence and other evidence. . ." (Tr. 29). Although this alone is not enough, the ALJ specifically discussed

his reasons as to why Blevins failed to satisfy Step Two of the social security evaluation process.

Based on substantial evidence in the record, the ALJ notes that although Blevins experienced symptoms of hypothyroidism and side effects from her medication prior to the last insured date, she was able fulfill gainful work activity during this time. In addition to her gainful work activity, the ALJ explicitly considered Blevins's mental impairments through a four part analysis. Based on Blevins's own testimony and other relevant medical evidence, the ALJ opined that Blevins did not have any functional disabilities in daily living due to her ability to drive, do household chores, walk for exercise, and care for her daughter. With regard to social functioning, the ALJ determined that Blevins had an only mild limitation based on her ability to drive, shop, go out to eat, and visit with friends. As for her ability to concentrate, the ALJ properly determined that Blevins had a mild limitation due to her ability to drive, watch television, and read. Finally, the ALJ noted that there is no evidence that Blevins experienced episodes of decompensation of an extended duration.

Blevins further argues that the ALJ failed to account for her functional limitations caused by obesity. However, Blevins herself failed to claim she experienced functional limitations due to her weight and no medical opinion in the record indicated she experienced a functional limitation due to being overweight.

For the reasons stated above, the ALJ supported his findings with substantial evidence that a combination of Blevins's impairments did not satisfy step two of the social security evaluation process.

### 4. The Appeals Council did not commit a mistake of law by finding that new evidence is not material to the disability determination.

Blevins argues that the Appeals Council committed legal error when they failed to

consider Dr. Bertoncini's May 15, 2009 letter as new evidence. Specifically, she argues that the letter is material evidence that would change the outcome of the ALJ's decision.

An ALJ's determination can be remanded if there is new and material evidence. Evidence is considered "material" if there is a reasonable probability that it would have changed the outcome of the claimant's hearing. *Schmidt v. Barnhardt*, 395 F.3d 737, 742 (7th Cir. 2005).

There is no reasonable probability that Dr. Bertoncini's May 2009 letter would have changed the outcome of the hearing because the ALJ properly considered all relevant medical evidence both before and after the date last insured. The medical records and Blevins's testimony provided the ALJ with substantial evidence that Blevins was not affected with Celiac disease prior to December 31, 2005. Also, the ALJ already chose to give Dr. Bertoncini's January 9, 2009 letter little weight due to the reasons stated above. Because both letters claim that Blevins was diagnosed with Celiac disease, and the ALJ properly discounted Dr. Bertoncini's first letter, this Court finds that there was no reasonable probability the second letter would have changed the outcome of the opinion.

## IV. CONCLUSION

Because the ALJ's step two finding that Blevins was not severely impaired was supported by substantial evidence and Dr. Bertoncini's letter would not have reasonably changed the outcome of the ALJ's hearing, Blevins's motion for remand is **DENIED**. Accordingly, this Court **AFFIRMS** the ALJ's decision.

**SO ORDERED**

Dated this 15th day of March, 2012.

16

s/Christopher A. Nuechterlein  
Christopher A. Nuechterlein  
United States Magistrate Judge